**In re PELZER.**

Patent Appeal No. 3869.

Court of Customs and Patent Appeals.
Dec. 6, 1937.
Rehearing Denied Dec. 23, 1937.

Pennie, Davis, Marvin & Edmonds, of New York City (Raymond F. Adams and Louis D. Forward, both of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision by the Examiner which denied the patentability of two claims, numbered 1 and 2, respectively, in appellant's application for a patent upon a method of cracking hydrocarbons.

Claim 1 is illustrative. It reads: "1. A method of cracking hydrocarbon oils, comprising flowing a stream of the oil through a heating operation and heating it in the vapor phase to a high cracking temperature therein, maintaining the hot vapors discharged from the heating operation at a cracking temperature for a substantial period of time in a digesting operation, discharging the vapors from the digesting operation directly into a zone in which any entrained tarry matter is precipitated by scrubbing the vapors with a liquid thereby freeing the vapors from any entrained tarry matter and in which the temperature of the vapors as discharged from the digesting operation is substantially reduced, subjecting the vapors escaping uncondensed from the scrubbing operation to a fractionating operation to form an intermediate condensate and returning the condensate therefrom to the heating operation, and discharging from the system without reintroduction into the heating opera-

tion, tar as separated in the scrubbing operation free from light oil constituents."

The particular step emphasized by appellant as lending patentability to the claims is that expressed by the clause: " * * * Discharging the vapors from the digesting operation directly into a zone in which any entrained tarry matter is precipitated by scrubbing the vapors with a liquid thereby freeing the vapors from any entrained tarry matter and in which the temperature of the vapors as discharged from the digesting operation is substantially reduced. * * * "

The decisions of the tribunals of the Patent Office are based upon anticipation by prior art; the four references cited being the following patents: Ekstrand, 1,388,415, August 23, 1921; Ellis, 1,396,999, November 15, 1921; Alexander, 1,407,619, February 21, 1922; Dubbs, 1,594,093, July 27, 1926.

In the brief of the Solicitor for the Patent Office, the suggestion is offered that an adjudication by the Board of Appeals affirming the decision of the Examiner in a prior proceeding, respecting an application of which the instant application is stated to be a division, became final upon the issue here involved; the cases of In re Becker, 74 F.2d 306, 22 C.C.P.A. (Patents) 843 (with its citations), and In re Ellis, 86 F.2d 412, 24 C.C.P.A. (Patents) 759, being cited. This was not, however, specifically given as a ground of rejection of the instant claims by either of the tribunals of the Patent Office (although the prior decisions were referred to by both), and we have considered the case upon the merits.

The principal reference relied upon is the patent to Alexander; the others having been cited not as disclosing the step of appellant's process above quoted, but as meeting certain other limitations of the counts. The brief for appellant says:

" * * * the appellant concedes that if this Alexander patent does disclose the step defined by this phrase (or even its substantial equivalent), any other differences between the process defined by the appealed claims and the disclosure of the Alexander patent are not sufficiently material to sustain the patentability of the appealed claims, in view of the supplemental disclosures of the other three prior patents.

"The main issue here involved therefore may be resolved into the question (1) does the Alexander patent disclose a cyclic vapor phase cracking process in which there is interposed, at the required point in the cycle, a process step the same as that defined by the above-quoted phrase, or (2) does the Alexander patent disclose a cyclic vapor phase cracking process including, at the specified point, a step which is at least a substantial equivalent of the above defined step, so that the difference is obvious and merely a matter of degree. The eight assignments of error, all of which are relied upon, all deal with and turn upon the answer to these questions. If the Alexander patent discloses a process including a step which is even the substantial equivalent of the step above identified, to an extent such that the man skilled in the art would thereby be taught how to solve the problem with which the present invention deals, appellant concedes that he should not prevail on this appeal, even though the exact operation disclosed in the Alexander patent might not in itself be entirely satisfactory."

We may remark in the first place that the essential elements of the claims here at issue are shown by the record to have received very extensive consideration by the tribunals of the Patent Office. It does not seem to be questioned that their subject-matter was involved in appellant's original application of which the one before us is a division. The full proceedings had there with respect to them is not contained in the record; only the decision of the Board of Appeals being given in full. Sufficient appears, however, to show that they were rejected there upon the same references cited here. It is noted that, first and last, the claims have been the subject of official actions by at least three different Examiners, and also that two of the members of the Board who decided the instant case were different individuals from two of those who decided the original case. So, not only have the claims been four times the subject of final action by tribunals of the Patent Office, but at least eight different persons, all presumed to be experts in the art involved, have scrutinized and rejected them. Furthermore, it appears that the issue was several times passed upon by Examiners in the light of arguments presented upon requests for reconsideration before the Examiner's action was made final.

Obviously, therefore, the merits of the case have had the painstaking attention of the tribunals of the Patent Office.

It is the contention of appellant that the Board failed correctly to interpret the claims; but it is conceded that the Board was of opinion that, even under appellant's interpretation, the patent to Alexander discloses the step with which we are here concerned, or at least its substantial equivalent.

While appellant makes the contention alluded to as to the Board's interpretation of the claims, there is no contention that its description of the respective processes is inaccurate. These we quote.

Of appellant's process it is said: "* * * Oil from a crude oil stock is passed through a coil 1 where it is heated to a vapor phase cracking temperature. The hot vapors then pass through the digesting chambers 5, 6, 7 and 8 where they are maintained at a cracking temperature for a substantial period. The vapors are then led into the lower end of the tower 38 and pass upwards through the tower. Hot condensate from other towers, together with crude oil, is fed into the tower 38 near the top and flows down through this tower so as to scrub the vapor passing up. The tower 38 may have baffles in it and a pool of tar may be maintained in the lower end of the tower. It is the purpose of applicant to thoroughly scrub the vapors in the tower 38 so as to remove all of the impurities, tarry matter and the carbon mist formed during cracking. The vapor passes from the tower 38 to the fractionating tower 39 where condensate is formed and separated by introducing fresh stock and condensate at the top of the tower. The condensate from the bottom of this tower is returned and mixed with the fresh stock passing to the heating coil 1 and is again vaporized."

Of the Alexander patent the Board said:

"* * * Several forms of inventions are shown in this patent but the examiner relies on the form shown in Fig. 8. In this figure, crude oil is heated to a vapor phase cracking temperature in the still 121 and is vaporized. The vapor passes to the cracking tubes 113 and then to the lower end of the tower 110. Crude oil is pumped into the upper end of the tower 110 and contacts with the vapor passing upwards through it. The vapor passes out at the top and then passes up through the fractionating tower 117. The condensate from the tower 117 is returned to the still 121.

"The main objection that applicant raises to this reference is that the tower 110 is not described in detail as being a scrubbing tower. It is, therefore, argued that the patentee did not have the knowledge that it was absolutely necessary to thoroughly scrub the vapors in the tower 110 in order to eliminate the carbon mist formed in the vapor. It is true that the patentee does not speak of removing carbon mist from the vapor in the tower 110, but if the tower serves as a scrubbing tower it is evident that this will be accomplished. The examiner refers to other forms of the invention in the patent, particularly to that shown in Fig. 5. This figure shows a tower 79 into which vapors from the cracking tubes 82 pass. The patent states that the vapors are scrubbed in this tower by incoming oil admitted at the top. The examiner regards the tower 79 in Fig. 5 to be comparable with the tower 110 in Fig. 8 and concludes that the tower 110 is likewise a scrubbing tower."

The brief on behalf of appellant before us is quite an elaborate one, and relates chiefly to the scrubbing of the vapors with a liquid which frees such vapors from entrained tarry matter.

It is conceded that in that part of Alexander's specification describing the operation of the form of apparatus illustrated in his Figure 5, the patentee, "in describing the passage of the vapors through the heat interchanger 79 * * * states that the vapors 'are scrubbed by the incoming oil,'" but it is urged, in effect, that this terminology was used merely to describe the action which takes place in the usual dephlegmator or heat interchanger. It is said that this type of heat interchanger is common in the industry, but it is argued that the degree of contact between the liquid and vapors, while adequate for cooling the vapors and preheating the sprayed-in oil, does not remotely approach the degree of contact that would be required to separate the mechanically entrained tarry particles. The argument is further made to the effect that the fact that Alexander proposed to return all of the liquid material from the bottom of the tower directly to his heating and cracking zone shows that "Alexander had no conception of scrubbing mechanically entrained tarry particles from the vapors in the tower 79."

The question, thus raised obviously is one which requires technical knowledge of

the art for determination. The argument was addressed to the technicians in the Patent Office, and by them overruled. The board said:

"It may be noted that the claims appealed are quite broad. They include the step of, 'discharging the vapors from the digesting operation directly into a zone in which any entrained tarry matter is precipitated by scrubbing the vapors with a liquid thereby freeing the vapors from any entrained tarry matter.'

"This step does not require that substantially all tarry matter, carbon mist, etc. are removed. Even if it did, we do not believe that the claims would define over Alexander. There can be no question but that the oil pumped into the top of the tower 110 in the patent will scrub out tarry matter from the vapors passing upwards. The patentee does not state how much oil is pumped into the tower but he evidently intends to pump sufficient oil into it to remove the objectionable tarry matter and impurities. If there is any difference in scrubbing, it is merely a matter of degree. If it be found that some tarry matter remained in the vapor if the scrubbing is not sufficient, it would be obvious to intensify the scrubbing to remove the objectionable impurities."

The arguments have been quite carefully considered, but we are not convinced that the conclusion reached by the tribunals of the Patent Office was erroneous. The function of scrubbing the vapors by use of a liquid is clearly taught by Alexander, and it seems clear to us that the difference in results, if any, between the operations of appellant and the patentee would be merely one of degree.

The decision of the Board of Appeals is, therefore, affirmed.

Affirmed.

GRAHAM, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.